**OFFICE OF THE FEDERAL PUBLIC DEFENDER**
**DISTRICT OF MARYLAND**
NORTHERN DIVISION
TOWER II, 9th FLOOR
100 SOUTH CHARLES STREET
BALTIMORE, MARYLAND  21201-2705
TEL:  (410) 962-3962
FAX:  (410) 962-3976
TOLL FREE: (855) 213-8450

JAMES WYDA                                                                                         CYNTHIA A. FREZZO
                                                                                                              ANDREW R. SZEKELY
FEDERAL PUBLIC DEFENDER                                                ASSISTANT FEDERAL PUBLIC DEFENDERS

January 17, 2024

Honorable Ellen Lipton Hollander
United States District Court
101 W. Lombard St.
Baltimore, MD 21201

      Re:    *United States v. Brandon Glen Jackson*, **Criminal No. ELH-22-0141**
                **Sentencing Memorandum**

Dear Judge Hollander:

      Mr. Jackson comes before the Court for sentencing on February 2, 2024, following his guilty plea to one count of possession of a firearm by a person under indictment, in violation of 18 U.S.C. § 922(n).  We respectfully request that the Court impose a time-served sentence with a period of supervised release.  This sentence is sufficient but not greater than necessary to fulfill the purposes of sentencing under 18 U.S.C. § 3553(a) because it takes into account Mr. Jackson's lack of prior convictions, the non-violent, possessory nature of his offense, and the lasting collateral effects of this conviction.

### The Offense

      On March 24, 2022, Mr. Jackson had two routine consensual encounters with members of the Maryland State Police at the Hagerstown Speedway.  The troopers came to the speedway for the report of a vehicle blocking an entrance.  At that time, the Hagerstown Speedway had contracted with "Freedom Convoy" members to use the racetrack as a campground.  According to the Maryland State Police, when police arrived, they saw a white mini bus blocking part of the

*Defense Sentencing Memorandum*
*US v. Brandon Glen Jackson, Criminal No. ELH-22-0141*

entrance. The vehicle that Mr. Jackson had been camping in —a white 2020 Honda Civic—was parked on the shoulder of the highway; but was later moved to a grassy area within the camp.

When Maryland State troopers arrived, Mr. Jackson approached them to describe complaints that he and several other individuals had regarding the convoy and its members. During that conversation, the trooper noted that, "it wasn't even something I was thinking about, but do you have any guns on you right now?" Dash-camera footage, beginning at 12:48. Mr. Jackson replied in the affirmative, and answered the trooper's questions regarding the firearm, a 9 millimeter pistol. Mr. Jackson also stated, "I don't necessarily know all the laws here in Maryland," explaining how he was from Arizona and that Arizona has "constitutional carry."[1] At that time and following the conclusion of that first encounter with law enforcement, Mr. Jackson was not detained, searched, or interrogated further. Mr. Jackson had lawfully purchased the firearm in December of 2020.

It was not until approximately 45 minutes after this initial encounter with law enforcement that Mr. Jackson was asked to step aside by a more senior member of the Maryland State Police. Mr. Jackson did so willingly, and was questioned again about whether he had a firearm and whether he had a Maryland permit. Mr. Jackson again admitted that he had a firearm, that he did not have a Maryland permit, but that he was traveling through Maryland and coming from Arizona, which did not require permits to carry. Mr. Jackson was subsequently arrested and charged with Wearing a Handgun and Wearing a Loaded Handgun, in violation of Md. Crim. Law § 4-203.[2] During a search pursuant to that arrest, officers retrieved the firearm from a holster worn under Mr. Jackson's pants. *See* Presentence Investigation Report ("PSR") at ¶ 38.

Because Mr. Jackson had, and still has, no prior convictions and because the gun was a lawfully purchased, unmodified pistol, the sole basis for federal jurisdiction was Mr. Jackson's interstate travel. The indictment that was pending at the time of Mr. Jackson's travel was subsequently dismissed in May 2022.[3] Mr. Jackson was not otherwise prohibited from possessing a firearm.

---

[1] Arizona's "Constitutional Carry" law allows any citizen who can legally own or purchase a firearm and is 21 years of age or older to carry that firearm loaded and concealed on their person, without any type of permit or license. City of Phoenix Police, *Arizona Weapons and Firearms Laws* at 3, available at: https://phoenix.gov/policesite/Documents/088411.pdf. As of January of 2023, Arizona was one of twenty-five such states that allowed the concealed carrying of a firearm without a permit. Adam Edelman, *Carrying A Concealed Loaded Gun without a Permit May Soon Be Legal in Most States*, NBC NEWS, Jan. 13, 2023, available at: https://www.nbcnews.com/politics/politics-news/permitless-concealed-carry-may-soon-legal-states-rcna64947.

[2] These charges were ultimately placed on the STET docket. PSR at ¶ 38.

[3] Two charges were re-filed from this original indictment—resisting arrest and hindering prosecution—and are still pending as of the time of filing. Mr. Jackson is released on those charges and has trial scheduled later in February 2024.

*Defense Sentencing Memorandum*
*US v. Brandon Glen Jackson, Criminal No. ELH-22-0141*

**The Guidelines**

The guidelines are not in dispute. The parties agree that the base offense level is 14, because Mr. Jackson was a prohibited person at the time of the offense, because of the then-pending indictment in Arizona. U.S.S.G. §2K2.1(a)(6)(A). Mr. Jackson also receives a two-level reduction for acceptance of responsibility. U.S.S.G. §3E1.1(a). This results in a final adjusted offense level of 12. PSR at ¶ 33.

Mr. Jackson has no prior convictions. His criminal history results in a score of zero and a criminal history category of I. PSR at ¶ 36.

The advisory guidelines range is 10 months to 16 months of imprisonment, and is in Zone C of the Sentencing Table. PSR at ¶ 63. The statutory maximum penalty is 5 years of incarceration. 18 U.S.C. § 922(n).

**Mr. Jackson's Background and Characteristics**

Starting with his parents' divorce when he was five, Mr. Jackson's life has been marked by periods of instability which led to his cycling in and out of poverty. After his parents' divorce, Brandon resided primarily with his mother. Later, however, she enlisted in the United States Army, leading Brandon to relocate and reside with his father.

From then on, during his most formative years, Brandon's mother was subject to frequent deployments as part of her military service. When Mr. Jackson was just nine, the Iraq War started and his mother was deployed into combat. While his school peers were passing typical elementary school milestones, Mr. Jackson lived daily with the fear of losing his mother. When he would hear news reports of American casualties in Iraq, he would wonder whether his mother was among them. Mr. Jackson's fears were tragically realized when his stepfather was killed while serving in Iraq.

The years that followed were not easy. Brandon spent most of the remainder of his childhood with his father, who worked as a traveling sales representative for a pet supply company. His father would often take Brandon on the road to shows with him. Mr. Jackson treasures the bonds he formed on the road with his father, but frequent sales trips only compounded the unstable, transient aspects of Brandon's upbringing.

In 2010, following the Great Recession, Mr. Jackson's father lost his job and with it, their housing. This happened when Mr. Jackson was about 16 or 17 years of age; thus, instead of focusing his efforts entirely on school, friends, and other typical teenage pursuits, Brandon had to

*Defense Sentencing Memorandum*
*US v. Brandon Glen Jackson, Criminal No. ELH-22-0141*

start working so as to supplement the household income. The family's downward economic mobility and instability became evermore apparent, which took a toll on both Mr. Jackson and his father. Once he graduated high school, Brandon left home seeking a more stable future.

And in large part, Mr. Jackson was successful; earning his bachelor's degree and entering the workforce as a software engineer. The biggest disruption to that life came in December of 2020 when Mr. Jackson was arrested in Arizona. As a direct result of that criminal action, Mr. Jackson lost his job as a programmer and lost his home.

Mr. Jackson had to start from scratch, building a business that he could use as a temporary housing fix and hopeful source of future income. Due to the backlog of cases and suspension of most court activities through the COVID-19 pandemic, his state charges in Arizona lingered, and were not resolved until a dismissal came in May of 2022. During the pendency of that action, though, Mr. Jackson committed the instant offense. Mr. Jackson has readily accepted responsibility, as seen by his cooperation with troopers on the day of his arrest and his plea in this case.

Although Mr. Jackson was not able to sustain the gaming business he had worked so hard to develop, he has been able to use his time on pretrial release, which will be nearly two years in length at the time of sentencing, to pick up the pieces of his life. Mr. Jackson found work at his local school district while this case was pending. Mr. Jackson was honest about his pending case, but was hired regardless as he was an exceptionally strong candidate for the position. And, as documented in the PSR, Mr. Jackson has numerous, adaptable skills in computer science, information technology, and repair service that leave him well-suited for future economic opportunities, which in turn lessen his risk of recidivism.

While certainly there have been significant bumps in the road, the vast majority of issues with Mr. Jackson's supervision involve his sporadic use of cannabis; two minor, non-jailable offenses which have since been dismissed in their entirety; and several instances involving location monitoring violations. Those violations have been adequately addressed in prior court proceedings and with Pretrial Services, which has since requested (and received subsequent Court orders) modifying Mr. Jackson downward to a curfew (in May of 2023) and then removing location monitoring all together (in August of 2023). Those conditions have not changed, nor has any party sought a modification in the time since. Now 30 years of age, Mr. Jackson is at a point where he is very much ready to move past this difficult and regrettable time in his life, and get back to fashioning the stable household and income that he has worked towards, ever since he was 17 and his father lost everything.

*Defense Sentencing Memorandum*
*US v. Brandon Glen Jackson, Criminal No. ELH-22-0141*

### **The § 3553(a) Factors**

Both the government and the defense are requesting a sentence to supervised release—the parties only disagree as to whether a term of home detention is necessary. Given that Mr. Jackson spent nearly a week in continuous custody, and has spent nearly two years on pretrial supervision, 191 days of which were spent either on home detention (184 days) or home confinement (7 days), Mr. Jackson submits that a time-served sentence is sufficient but not greater than necessary to fulfill the purposes of sentencing under 18 U.S.C. § 3553(a). In addition to the factors discussed above, the collateral consequences and immediate effects of Mr. Jackson's prosecution and sentence do not call for a further period of incarceration or home confinement.

The collateral consequences of this conviction will be with Mr. Jackson for decades to come. The conviction will, unless his rights are later restored, disarm Mr. Jackson for life; he will no longer be able to lawfully possess any type of firearm. It will deny him future professional opportunities, licenses, and the economic gain that can otherwise come with a background in software engineering.

The conviction will also deprive Mr. Jackson of valuable civil rights, including the right to vote while he is on supervision, as well as rendering him ineligible for certain government benefits. The collateral consequences of a criminal conviction "affect virtually every aspect of human endeavor, including employment and licensing, housing, education, public benefits, credit and loans, immigration status, parental rights, interstate travel, and even volunteer opportunities. Collateral consequences can be a criminal defendant's most serious punishment, permanently relegating a person to second-class status."[4]

The Fourth Circuit has held that collateral consequences of a criminal conviction are appropriate sentencing considerations under § 3553(a). *See United States v. Pauley*, 511 F.3d 468, 474-75 (4th Cir. 2007) (holding that sentencing court's consideration of defendant's loss of teaching license and state pension was "consistent with § 3553(a)'s directive that the sentence reflect the need for 'just punishment,' *id.* § 3553(a)(2)(A), and 'adequate deterrence,' *id.* § 3553(a)(2)(B)"). In Mr. Jackson's case, the collateral consequences alone are sufficient punishment for his offense and certainly sufficient to deter future criminal conduct by himself and similarly situated others.

---

[4] NAT'L ASS'N OF CRIMINAL DEFENSE LAWYERS, *Collateral Damage: America's Failure to Forgive or Forget in the War on Crime*, at 12 (May 2014), available at https://www.nacdl.org/ restoration/roadmapreport.

The mere fact of Mr. Jackson's prosecution is unique. In a query of the last 30 years of cases brought to disposition in this District,[5] counsel could only find *three* prosecutions resulting in conviction under 18 U.S.C. 922(n). Each of these prosecutions involved other aggravating factors that are wholly absent from the case against Mr. Jackson, such as dangerous flight, evasiveness, violent crime, and/or involved firearms that had modified or obliterated serial numbers.

Indeed, this Court has often commented that it has never seen or recalled such a prosecution in our District. The JSIN data, attached at page 21 of the PSR, are therefore entirely unhelpful to the Court's sentencing analysis; the data only capture the larger group whose applicable guideline was §2K2.1, which primarily includes those convicted under 18 U.S.C. 922(g) and other more severe or obvious prohibitions on the right to possess a firearm.

### The Appropriate Sentence

As has been emphasized in previous pleadings before this Court, had Mr. Jackson not crossed state lines, the federal government would lack jurisdiction to prosecute any firearms offense relevant to the pistol at issue in this case. Mr. Jackson absolutely could have traveled with this firearm to a protest in Arizona; only by being in Maryland did he subject himself to criminal liability. With no prior criminal history, and with much to lose as far as the impact of this conviction, Mr. Jackson submits that a sentence to time-served with a component term of supervised release is appropriate in this case.

This sentence adequately reflects the seriousness of the offense, promotes respect for the law, provides just punishment, deters criminal conduct, protects the public, and avoids unwarranted disparities in sentencing. *See* 18 U.S.C. § 3553(a)(2)-(6).

### Supervised Release Conditions

In the PSR, the United States Probation Office has recommended a condition that reads, "You must not communicate, or otherwise interact, with any known member of extremist groups, without first obtaining the permission of the probation officer." The Court should strike that condition because it is so vague and overbroad it does not fairly put Mr. Jackson on notice as to whom he may or may not speak with.

The term "extremist group" is a subjective one. Some consider groups such as the Freedom Convoy to be extremist while others point to Black Lives Matter as an extremist group. In an era of a divided polity, any group is likely to be labeled "extremist" by its opponents. As written, Mr.

---

[5] This search was conducted using PACER and docket searches. It is not an official representation of how many 922(n) convictions have occurred in the allotted timeframe.

*Defense Sentencing Memorandum*
*US v. Brandon Glen Jackson, Criminal No. ELH-22-0141*

Jackson's ability to legally speak with someone will depend on his supervising probation officer's definition of a politically charged word.

### **Conclusion**

For these reasons, we respectfully request that the Court sentence Mr. Jackson to time served, with an appropriate term of supervised release to follow.

Sincerely,

/s/ CAF, /s/ARS
Cynthia A. Frezzo
Andrew R. Szekely
Assistant Federal Public Defenders